**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| RANA JAAFAR AL IBRAHIM, *et al.*,<br>*Plaintiffs*,<br>v.<br>MARCO RUBIO, *et al.*,<br>*Defendants*. | Civil Action No. 25 - 3908 (SLS)<br>Judge Sparkle L. Sooknanan |

## MEMORANDUM OPINION

In 2018, Rana Jaafar Al Ibrahim filed an I-130 petition on behalf of her husband, Ali Hassan A. Al Faraj, and their children, T.A. and Z.A, all Saudi nationals. Eight years later, they are still awaiting a final decision. The Plaintiffs sued the Secretary of State and the U.S. Embassy in Riyadh to compel the processing of their applications. The Defendants have moved to dismiss under Federal Rule of Civil Procedure 12(b)(6). Although the Court recognizes the hardship that the Plaintiffs have faced because of the extended delay, it must grant the Defendants' motion and dismiss the case.

## BACKGROUND

### A. Statutory Background

"An American citizen seeking a visa for [her] immediate relative must file an I-130 Petition with [U.S. Citizenship and Immigration Services (USCIS)]." *Motevali v. Rubio*, No. 24-cv-1029, 2025 WL 885116, at *1. (D.D.C. Mar. 21, 2025) (citation omitted). Next, USCIS "transfers the Petition to the [Department of State's] National Visa Center (NVC)[.]" *Id.* (citing 8 C.F.R. § 204.2(a)(3)). "The applicant must then pay a fee and complete additional paperwork, including Form DS-260 (the Electronic Application for Immigrant Visa and Alien Registration)." *Id.* (citing

22 C.F.R. § 42.63). "Once the NVC determines that it has the required paperwork, it marks the case 'documentarily complete,' and schedules an interview for the applicant." *Id.* (citing 9 Foreign Affs. Manual (FAM) § 504.1-2(b)–(d); 22 C.F.R. § 42.62; 9 FAM §§ 504.1-2(d)(1), 504.4-6). "After the interview, the consular officer 'must' either 'issue the visa' or 'refuse the visa[.]'" *Id.* (quoting 22 C.F.R. § 42.81(a)). "[U]nder Section 221(g) of the Immigration and Nationality Act (INA), an officer can temporarily refuse to issue a visa in order to allow for further administrative processing of an applicant's case if the officer needs more information or time to determine eligibility." *Sawahreh v. U.S. Dep't of State*, 630 F. Supp. 3d 155, 157 (D.D.C. 2022).

### B. Factual Background

The Court draws the facts, accepted as true, from the Plaintiffs' Amended Complaint and attachments. *Wright v. Eugene & Agnes E. Meyer Found.*, 68 F.4th 612, 619 (D.C. Cir. 2023).

Rana Jaafar Al Ibrahim is a United States citizen who resides in Saudi Arabia with her family. Am. Compl. ¶ 7, ECF No. 8. In November 2018, Ms. Al Ibrahim submitted I-130 petitions to USCIS on behalf of her husband, Ali Hassan A. Al Faraj, and their two minor children, T.A. and Z.A., all Saudi nationals. *Id.* ¶ 31. The U.S. Embassy in Riyadh interviewed the family on October 5, 2022. *Id.* ¶ 36. The family then submitted additional documentation at the Embassy's request. *Id.*

In November 2022, and again in December 2022, the Embassy notified Ms. Al Ibrahim that T.A.'s and Z.A.'s applications had been approved. *Id.* ¶¶ 37–38. The Embassy also requested, and Ms. Al Ibrahim submitted, the children's passports. *Id.* ¶ 37. The Embassy later returned the passports but did not issue the visas. *Id.* ¶ 39. The Plaintiffs did not hear from the Embassy again until June 2024, when it "erroneously notified Ms. Al Ibrahim that it had terminated T.A.'s application" because he had "abandoned" pursuit of the visa. *Id.* ¶ 40. The Embassy later corrected

this error. *Id.* Upon request, in October 2025, Ms. Al Ibrahim submitted additional information for T.A. and Z.A., "most of which had already been . . . provided" at the October 2022 interview. *Id.* ¶ 41.

In January 2026, the Immigrant Visa Unit at the Embassy asked Ms. Al Ibrahim to submit additional documentation "[i]n order to proceed with processing," after which it would schedule "an in-person re-oath appointment[.]"[1] *Id.* ¶ 42 (alteration in original). Ms. Al Ibrahim complied and the Embassy confirmed receipt of the documents. *Id.* ¶¶ 43–44. In February 2026, the Embassy relayed that "administrative processing on [the] cases ha[d] been complete[d]" and requested that the family provide medical examinations and police clearance reports and email "to schedule [their] re-oath appointment." *Id.* ¶ 45. Ms. Al Ibrahim again complied, sending copies of the police clearance reports and reporting that the medical examinations had taken place. *Id.* ¶ 46. The Embassy confirmed receipt, and instructed Ms. Al Ibrahim to "send [] a follow up email once the medical exams [were] electronically uploaded so [it could] schedule [the] re-oath appointments." *Id.* ¶ 47. The examining physician uploaded the examinations to the Plaintiffs' case records on April 1, 2026, and Ms. Al Ibrahim notified the Embassy on May 13, 2026. *Id.* ¶¶ 48–49. On May 21, 2026, the Embassy advised Ms. Al Ibrahim that "[d]ue to the war in the region, the U.S. Embassy and Consulates in Saudi Arabia are closed until further notice. All visa processing is currently suspended." *Id.* ¶ 52. To date, the Plaintiffs have heard nothing further from the Embassy. *Id.* ¶ 58.

---

[1] The term "re-oath appointment" used by the Embassy and throughout the filings appears to refer to a second interview, as described in Section 222(h) of the INA.

### C. Procedural Background

In November 2025, the Plaintiffs sued the Secretary of State to compel the processing of their visa applications. *See* Compl., ECF No. 1. In July 2026, the Plaintiffs filed an Amended Complaint, adding the Embassy as a Defendant and setting forth additional facts that took place between November 2025 and June 2026.[2] *See* Am. Compl. The Defendants have moved to dismiss under Rule 12(b)(6). *See* Mot. to Dismiss (Mot.), ECF No. 12. That motion is fully briefed and ripe for review. *See* Pls.' Opp'n to Mot. Dismiss (Opp'n), ECF No. 13; Defs.' Reply Supp. Mot. Dismiss (Reply), ECF No. 14.

## LEGAL STANDARD

Under Rule 12(b)(6), a court will dismiss a complaint that does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When reviewing a motion to dismiss under Rule 12(b)(6), courts "must construe the complaint 'in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged.'" *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979)). But courts need not accept as true "a legal conclusion couched as a factual allegation," nor an inference unsupported by the facts set forth in the complaint. *See Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

---

[2] The Defendants claim that the Amended Complaint is a supplemental pleading erroneously filed "as a matter of course" under Rule 15(a)(1). Mot. at 3 n.1. Even if true, leave to supplement should be "freely given[.]"*Foman v. Davis*, 371 U.S. 178, 182 (1962). And here, where the instant motion is fully briefed and neither Party would be prejudiced by supplementation, the Court treats the Amended Complaint as the operative pleading. *See Brown v. USCIS*, No. 23-cv-3669, 2024 WL 4253121 at *4 (D.D.C. Sep. 20, 2024) (same approach).

## DISCUSSION

Invoking the Administrative Procedure Act (APA), the Plaintiffs ask this Court to compel the Defendants to adjudicate their visa applications. The Defendants raise several arguments in support of dismissal, including that they have no duty to act and that the Plaintiffs' claims are barred by the doctrine of consular non-reviewability. The Court has previously addressed and rejected identical arguments in similar cases. *See, e.g.*, *Thein v. Trump*, No. 25-cv-2369, 2025 WL 2418402, at *7–11, (D.D.C. Aug. 21, 2025); *Motevali*, 2025 WL 885116, at *5. Here, however, the Court need not address these arguments because, even if the Plaintiffs prevail on those issues, their unreasonable delay claims ultimately fail.

Unreasonable delay is measured by six factors announced in *Telecommunications Research and Action Center v. FCC.* (*TRAC*), 750 F.2d 70 (D.C. Cir. 1984):

> (1) The time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities or a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is "unreasonably delayed."

*In re People's Mojahedin Org. of Iran*, 680 F.3d 832, 836–37 (D.C. Cir. 2012) (per curiam) (cleaned up).[3] Considering these factors, the Plaintiffs fall short on their claims.

*Factors one and two*: "The first two *TRAC* factors focus on the extent of and reasons for the agency delay." *Afghan & Iraqi Allies v. Blinken*, 103 F.4th 807, 816 (D.C. Cir. 2024). The first

---

[3] Although "*TRAC* set forth this framework to assess whether agency delays are 'so egregious as to warrant mandamus' under the All Writs Act," the D.C. Circuit has "routinely applied the same framework to assess claims that agency action has been 'unreasonably delayed' for purposes of the [APA]." *Afghan & Iraqi Allies v. Blinken*, 103 F.4th 807, 815 (D.C. Cir. 2024) (first quoting *TRAC*, 750 F.2d at 75, 79–80; and then quoting 5 U.S.C. § 706(1)).

factor, which is "the most important consideration under *TRAC*," is that "the time agencies take to make decisions must be governed by a rule of reason." *Id.* (quotation marks omitted) (first quoting *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008); and then quoting *TRAC*, 750 F.2d at 80). The second factor informs the first: "[W]here Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason." *TRAC*, 750 F.2d at 80.

To supply a congressional timetable, the Plaintiffs point to Section 233 of the Foreign Relations Authorization Act, which provides that "[i]t shall be the policy of the Department of State to process immigrant visa applications of immediate relatives of United States citizens . . . within 30 days of the receipt of all necessary documents from the applicant and the Immigration and Naturalization Service." Pub. L. No. 107-228, § 233, 116 Stat. 1350, 1373 (2002) (codified at 8 U.S.C. § 1201 note). But courts in this District have uniformly held that "the 30-day policy is just that—an internal State Department policy. It is not a statutory deadline." *Ordian v. Blinken*, No. 23-cv-2993, 2024 WL 3251226, at *5 (D.D.C. July 1, 2024); *accord Janay v. Blinken*, 743 F. Supp. 3d 96, 116 (D.D.C. 2024); *Milligan v. Pompeo*, 502 F. Supp. 3d 302, 318 (D.D.C. 2020). As the D.C. Circuit has explained in the context of a different statute, such "aspirational" language from Congress is "insufficient to set a deadline" for purposes of *TRAC* factors one and two. *See Da Costa v. Immigr. Inv. Program Off.*, 80 F.4th 333, 344 (D.C. Cir. 2023) (discussing 8 U.S.C. § 1571(b)). And without a mandatory deadline, "[c]ourts in this District label delays between three to five years as reasonable and generally extend the 'unreasonable' label to delays more than five years." *Motevali*, 2025 WL 885116, at *7 (cleaned up). "[T]he proper method for calculating delay . . . is the length of time between the last action the government took on a visa application and the

filing of plaintiff's complaint." *Sadiq v. Rubio*, No. 25-cv-2448, 2026 WL 913084, at *3 (D.D.C. Apr. 3, 2026) (cleaned up).

Here, the last government action was the Embassy's February 19, 2026, email, which instructed the Plaintiffs to follow up to schedule their interviews once their medical examinations were uploaded.[4] Am. Compl. ¶ 47. The Plaintiffs filed their Amended Complaint on July 27, 2026, so the relevant delay is just over five months. And unfortunately for the Plaintiffs, this is simply not long enough. *See Sadiq*, 2026 WL 913084, at *3 (nine months is not long enough); *Motevali*, 2025 WL 885116, at *7 (seventeen months is not long enough).

The Defendants also invoke a second rule of reason that further undermines the Plaintiffs' showing on these *TRAC* factors: the United States' ongoing conflict with Iran. The Defendants assert that "[t]he Riyadh embassy has suspended routine consular services since April 7, 2026, due to the current conflict with Iran." Mot. at 19 (citing *U.S. Visa Services*, U.S. Embassy & Consulates in Saudi Arabia, https://perma.cc/AJX7-HCDN (last visited Nov. 4, 2026)).[5] The Plaintiffs acknowledge as much, Am. Compl. ¶ 52, but contend that the "impossib[ility]" of scheduling interviews is a factual question inappropriate for resolution on a motion to dismiss. Opp'n at 13. But the Court need not resolve this factual question. It is enough that the Plaintiffs recognize that services are indeed suspended, which favors the Defendants. *See Arab v. Blinken*, 600 F. Supp. 3d 59, 70 (D.D.C. 2022) (recognizing in the context of the COVID-19 pandemic that embassy

---

[4] The email from the Embassy on May 21, 2026, alerting the Plaintiffs that it was closed due to "the war in the region," Am. Compl. ¶ 52, is not an "action" taken on the Plaintiffs' applications. And the communication regarding the erroneous cancellation of Z.A.'s application on June 21, 2026, Am, Compl. ¶ 4, was in error, so it cannot fairly be considered.

[5] "The Court takes judicial notice of information posted on official government websites without transforming the Government's motion into one for summary judgment." *Dastagir v. Blinken*, 557 F. Supp. 3d 160, 163 n.3 (D.D.C. 2021); *see also Cannon v. District of Columbia*, 717 F.3d 200, 205 n.2 (D.C. Cir. 2013) (taking judicial notice of an official government website).

shutdowns and the resulting application backlogs can tilt the first two *TRAC* factors "decisively in defendants' favor"); *see also Tate v. Pompeo*, 513 F. Supp. 3d 132, 150–51 (D.D.C. 2021) ("[T]he government's interests in balancing its own priorities and determining how to allocate scarce resources in a global pandemic outweigh plaintiffs' interests in immediate adjudication of their visas." (cleaned up)). Thus, the first and second *TRAC* factors favor the Defendants.

*Factors three and five*: The third and fifth *TRAC* factors "focus on the interests affected by agency delay." *Afghan & Iraqi Allies*, 103 F.4th at 817. The third factor observes that "delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake." *TRAC*, 750 F.2d at 80. And the fifth factor addresses "the nature and extent of the interests prejudiced by the delay." *Id.* The Plaintiffs claim that Ms. Al Ibrahim has been "separated from her husband and two minor children for years[.]" Opp'n at 13. The Amended Complaint is not clear on that point. It states that Ms. Al Ibrahim has "waited nearly eight years to reunite with and relocate her family to the United States." Am. Compl. ¶ 59. But it elsewhere states that "Ms. Al Ibrahim and her family currently reside in Dhahran, Saudi Arabia." *Id.* ¶ 7. At this stage, the Court must construe the facts in the light most favorable to the Plaintiffs, and thus accepts the allegation that Ms. Al Ibrahim is actually separated from her family. And considering that the INA seeks to further family reunification, factors three and five favor the Plaintiffs. *See Janay*, 743 F. Supp. 3d at 117 (noting that "the interest in re-uniting families weighs in favor of avoiding undue delay").

*Factor four*: "The fourth *TRAC* factor addresses whether expediting a visa application would harm other agency activities of equal or greater priority." *Arab*, 600 F. Supp. 3d at 71 (cleaned up). This factor is key, as the D.C. Circuit has "refused to grant relief, even though all the other factors considered in *TRAC* favored it, where a judicial order putting the petitioner at the

head of the queue would simply move all others back one space and produce no net gain." *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003) (cleaned up). The Plaintiffs insist that this is not such a case. They urge that their files are already complete, so "[c]ompelling a decision . . . produces a net gain, not a reordering of priorities." Am. Compl. ¶ 72. But even where "the effect of an individual case would be minimal, an accumulation of such individual cases being pushed by judicial fiat to the front of the line would erode the ability of agencies to determine their priorities." *Tate*, 513 F. Supp. 3d at 150. And here, untold numbers of applicants may be in the same position as the Plaintiffs, such that pushing their case to the front of the line would have little net effect. Thus, the fourth factor weighs in favor of the Defendants.

*Factor six*: The final *TRAC* factor "notes that 'the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.'" *Afghan & Iraqi Allies*, 103 F.4th at 820 (quoting *TRAC*, 750 F.2d at 80). Here, the Plaintiffs argue that the panoply of errors in the Defendants' handling of their visa applications "reflect[] a lack of reasoned decision-making." Am. Compl. ¶ 73. To be sure, the record raises eyebrows. But it contains no indication of bad faith, so factor six is neutral.

* * *

The Court recognizes the hardship that the Plaintiffs have endured and the frustration that results from the "well-documented delays in our visa-adjudication system." *Sadiq*, 2026 WL 913084 at *4. But the Plaintiffs have failed to establish unreasonable delay under the *TRAC* factors.

## CONCLUSION

For the foregoing reasons, the Court grants the Defendants' Motion to Dismiss, ECF No. 12. A separate order will issue.

SPARKLE L. SOOKNANAN
United States District Judge

Date: November 12, 2026